FILED

2022 Jan-05  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FREDRIKA M. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:21-CV-01699-AKK** |
| | ) | |
| **BLUE CROSS BLUE SHIELD OF** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Fredrika M. Miller, proceeding *pro se*, sues Blue Cross Blue Shield of Alabama for alleged violations of the Patient Protection and Affordable Care Act, 42 U.S.C. §§ 300gg-17, 300gg-12, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and Alabama housing law. *See* doc. 1. Miller also seeks to proceed *in forma pauperis*. Doc. 2. Miller's application to proceed *in forma pauperis* is due to be granted. However, as explained below, her complaint must be dismissed because it fails to state a viable claim to relief. *See* 28 U.S.C. 1915(e)(2).[1]

## I.

Miller alleges that while Blue Cross provided health insurance to her and her mother, they both became ill due to a landscaper's overuse of pesticides at Miller's

---

[1] "Notwithstanding any filing fee, or any portion thereof, that may have been paid," the court "shall dismiss the case at any time" if it determines that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

home. *See* doc. 1 at 5. Miller allegedly asked Blue Cross to investigate the pesticide use and to get her and her mother "specialized care," but Blue Cross "refused at every level and throughout the next 12 years." *Id.* Miller also asserts that her former partner "continuously [made] death threats" against her and her mother, "caus[ing] many instances of injuries and physical harm requiring treatment in hospitals and at doctor's offices for decades." *Id.* Allegedly, despite her reports of these instances to Blue Cross, Blue Cross "claimed [it] had fulfilled [its] duties as provider[] of insurance." *Id.* Miller asserts that Blue Cross's "inaction" led her and her mother to lose their insurance and become homeless and that her mother passed away in 2019 as a result of the pesticides. *See id.* According to Miller, Blue Cross's conduct violated § 300gg-17 of the ACA. *See id.*

Miller also claims that Blue Cross ceased covering her and her mother "without reason or permission" and that she and her mother "had to restart coverage with [Blue Cross] at great cost." *Id.* Allegedly, this gap in coverage "directly related to [Miller's] mother's untimely death." *Id.* On these facts, Miller asserts that Blue Cross also violated § 300gg-12 of the ACA. *Id.*

Finally, Miller asserts that Blue Cross "refused and neglected to protect [her] and her mother from domestic violence or investigate the threats against them" despite her reports to Blue Cross. *Id.* at 6–7. Because Miller and her mother were

subsequently "forced to vacate their premises in August of 2014," Miller claims that Blue Cross violated the FHA and the Alabama Fair Housing Law.  *See id.*[2]

## II.

The court liberally construes *pro se* pleadings.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  When a litigant proceeds *in forma pauperis*, as here, the court must "screen" the complaint to ensure it states a viable claim to relief that is "plausible on its face."  *See* 28 U.S.C. § 1915(e)(2); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review dismissal under § 1915(e)(2)(B)(ii)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under these standards, Miller's claims cannot proceed.

### A.

Miller first alleges that Blue Cross violated §§ 300gg-17 and 300gg-12 of the ACA.  *See* doc. 1 at 3, 5, 8.  However, "[the] fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action[3] in favor of that person."  *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278,

---

[2] Miller has apparently sued Blue Cross and other parties "in three federal district courts" lodging these or related allegations.  *Id.* at 8.  Although the court found cases in which Miller sued a management company, a homeowners' association, and other entities, the court did not locate other lawsuits against Blue Cross.  *See, e.g.*, *Miller v. Coastline Mgmt.*, No. 21-00069-JB-N, 2021 WL 5832999 (S.D. Ala. Nov. 10, 2021), *report and recommendation adopted*, 2021 WL 5829033 (S.D. Ala. Dec. 8, 2021); Compl., doc. 1 in *Miller v. Allstate Ins. Corp.*, 2:21-cv-00646-ECM-SMD (M.D. Ala. Sept. 28, 2021).

[3] A "cause of action," or a legal claim, permits someone to file a lawsuit.  *See Cause of Action*, BLACK'S LAW DICTIONARY (11th ed. 2019).

1293–94 (11th Cir. 2015) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)).  Rather, "private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Accordingly, Miller may not sue Blue Cross for a purported violation of the ACA unless Congress provided private individuals like her the right to do so.

Upon review, however, these sections do not provide express private rights of action.  Section 300gg-17, "Ensuring the quality of care," sets reporting requirements for group health plans and health insurance providers, limits data collection in these reports, limits certain premium rates and eligibility standards, authorizes the Secretary of Health and Human Services to promulgate regulations, and requires the Government Accountability Office to review those regulations.  *See* 42 U.S.C. § 300gg-17.  Section 300gg-12, "Prohibition on rescissions," restricts group health plans and health insurance providers from rescinding coverage except in instances of fraud or intentional misrepresentation and requires providers to give notice to enrollees prior to cancelling coverage.  *See id.* § 300gg-12.  Nowhere do these provisions explicitly give an individual the right to sue her provider for violations.[4]

---

[4] *See also Rosenberg v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:18-CV-2648-T-33SPF, 2019 WL 399571, at *2 (M.D. Fla. Jan. 31, 2019) (noting that provisions of the ACA do not "create[] a private right of action for insureds" and that "the Secretary of Health and Human Services or the appropriate state authorities are empowered to enforce the provisions of the ACA").

Likewise, these sections do not provide implicit private rights of action. To determine whether a statute provides an implied private right of action, courts generally consider four factors, with a specific focus on the second factor: (1) whether the plaintiff constitutes "one of the class for whose especial benefit the statute was enacted"; (2) whether there exists any indication of legislative intent to create or deny a remedy; (3) whether inferring a private right to sue "would be 'consistent with the underlying purposes of the legislative scheme'"; and (4) whether the cause of action "'is traditionally relegated to state law.'" *See McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221–22 (11th Cir. 2002) (quoting *Cort v. Ash*, 422 U.S. 66, 95 (1975)); *Love v. Delta Air Lines*, 310 F.3d 1347, 1351–52 (11th Cir. 2002) (citing *Sandoval*, 532 U.S. 275). Legislative intent to create a private right of action is the "touchstone" of this analysis, and "[f]irst and foremost, [courts] look to the statutory text for 'rights-creating' language." *Love*, 310 F.3d at 1352 (quoting *Sandoval*, 532 U.S. at 288).

Here, Congress did not include any mention or suggestion of a private right to sue in §§ 300gg-17 or 300gg-12. On the contrary, in § 300gg-22, Congress "endowed the Secretary of Health and Human Services and state authorities with enforcement power." *Rosenberg*, 2019 WL 399571, at *3; 42 U.S.C. § 300gg-22 (describing state and federal enforcement authority).[5] In light of these facts and the

---

[5] *See also Grossman v. Dirs. Guild of Am., Inc.*, No. EDCV 16-1840-GW(SPx), 2017 WL 5665024,

case law, the court may not infer a private right of action in either of these provisions of the ACA.  Thus, Miller's §§ 300gg-17 and 300gg-12 claims must fail.

B.

Miller also alleges that Blue Cross violated the FHA.  *See* doc. 1 at 8–9. Although Miller does not specify the specific provisions at issue, the court assumes she is referring to the provisions that make it unlawful to discriminate against any person in "the terms, conditions, or privileges of sale or rental of a dwelling," or for "any person or other entity whose business includes engaging in residential real estate-related transactions" to discriminate in these transactions, based on an individual's "race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. §§ 3604, 3605.  Unfortunately, however, Miller does not plead that Blue Cross, her health insurance provider, discriminated against her in the terms of her residence, engaged in discriminatory real-estate transactions, or interfered in the "making or purchasing of loans or . . . other financial assistance" for her home due to her race, religion, gender, disability, familial status, or nationality.  *See id.* Instead, Miller alleges that her and her mother's medical bills, following Blue Cross's inaction, led them to lose the home.  *See* doc. 1 at 9.  While the court

---

at *7–8 (C.D. Cal. Mar. 6, 2017) (finding that the plaintiffs did not establish that §§ 300gg-5 and 300gg-19 contain implied private rights of action in part because the ACA "contains an enforcement provision limited to the states and the Secretary of Health and Human Services").

recognizes Miller's significant loss, these pleaded facts do not amount to a plausible FHA violation.

Moreover, the FHA requires individuals to sue for violations "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(A).  Miller pleads that she and her mother had to leave their home in 2014, after Miller reported instances of domestic violence to Blue Cross, seven years before she filed this lawsuit.  *See* doc. 1 at 9.  Thus, it appears Miller's FHA claim is time-barred, and the court must also dismiss it on this ground.

## C.

Last, Miller pleads that Blue Cross violated provisions of the Alabama Fair Housing Law, which also bars discriminatory housing practices.  *See* doc. 1 at 8.  The law essentially defines discriminatory housing practices as discriminating while selling or renting a dwelling, publishing discriminatory advertisements, misleading individuals about the availability of a dwelling, or inducing others to discriminate, based on a person's race, religion, gender, disability, family status, or nationality.  *See* ALA. CODE § 24-8-4.  However, Miller does not plead facts suggesting that Blue Cross engaged in discriminatory housing practices or acted on the basis of any of these factors.  Therefore, Miller fails to state a claim under the Alabama Fair Housing Law.

In addition, Miller cites §§ 24-8-12 and 24-8-13, which provide only for "informal" means of resolving discriminatory practices, such as by filing a complaint with the designated Alabama state agency. *See id.* §§ 24-8-3, 24-8-12, 24-8-13. Construing Miller's pleadings liberally, however, Miller appears to sue under § 24-8-14, which permits individuals to file civil lawsuits without first filing informal complaints. *See id.* § 24-8-14(a). But an individual must sue "within one year after the alleged discriminatory housing practice has occurred." *See id.* Because it appears that the housing-related incidents in this case occurred in 2014 or earlier, *see* doc. 1 at 8–9, Miller's state-law claim is also time-barred and must be dismissed.

### III.

In sum, although Miller's application to proceed *in forma pauperis*, doc. 2, is due to be granted, her complaint, doc. 1, fails to state viable claims and must be dismissed. *See* 28 U.S.C. § 1915(e)(2). An order effectuating this opinion follows.

**DONE** the 5th day of January, 2022.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

8